Your Honor, may it please the Court. My name is Jennifer Wellman. With me at counsel table is Vicki Rye, and we represented Mr. Clark in the matter below. I would like to reserve two minutes for rebuttal. You may do so. Just watch the clock. Thank you, Your Honor. The district court held that the evidence against Mr. Clark was admissible on one ground, that he had abandoned the property and therefore lacked standing. I would like to make three points this morning with respect to that erroneous ruling. One, abandonment is not presumed. There must be objective facts in the record that the person intentionally relinquished his privacy interests in the bag. You may have a good point on that, counsel. What about search incident to arrest? With respect to search incident to arrest, that argument was not argued below. Nor are there facts. Can't we affirm on any basis that it's justified by the record? There is case law that does suggest that. With respect to the arguments raised by the government, it wasn't argued below. Is that simply that it wasn't reached below, but that it wasn't argued below? I'm sorry, Your Honor. I had a hard time hearing it. It's not simply that it wasn't reached below, but that it wasn't argued below. That's correct, Your Honor. The government below, in arguing that it was a lawful search incident to an assault, was based upon the officer's testimony that Mr. Clark had come into the trailer, had seen the officer, stopped in his tracks, become nervous, and when asked about what is in the bag, turned and elbowed the officer with his elbow and then fled from the trailer. The district court specifically found that he did not come into the trailer. And he also found that there was no probable cause based upon those facts, or the government failed to prove that there was probable cause to arrest for an assault given those facts. The Ninth Circuit does have a general rule that if it is not argued below, that it will not be entertained by this Court unless there's exceptional circumstances, and I don't think that these circumstances warrant such review on that basis. The question is, are there any factual findings that would be necessary to that theory that haven't been made? Yes, Your Honor. The government's argument now is based upon the facts that happened after Mr. Clark was shoved over the railing. The district court did not make any factual findings with respect to what happened after that time. That those facts were contested. As reflected in the government's brief, they contend that Mr. Clark was swinging and fighting the officers. We contended that Mr. Clark was simply putting his arms up in answer to the repeated blows that the officers were hitting him. So the short answer is that the question is whether there was probable cause to arrest him as opposed to a reasonable suspicion to stop him. And was the probable cause to arrest him determination ever made? In other words, in order to have a search history after a proper arrest, has a determination been made that there was probable cause to arrest him? No, Your Honor. The district court held there was not probable cause to arrest Mr. Clark, and instead turned to whether there was reasonable suspicion to stop him. And it's our position that the question is whether there was probable cause to arrest him at the outset, but the question is was there probable cause to arrest him when he was ultimately arrested, right? Because the search history to the arrest was not incident to the original stop, but an incident to the actual arrest when he was found to be responsible for doing the arrest. He was fleeing, wasn't he? He was not, Your Honor. The judge found that he was fleeing. However, we contend that that factual finding was clearly erroneous. Well, couldn't the police officer reasonably assume that he was being assaulted by this guy? The district court found that he was not assaulted by Mr. Clark. When he showed up at the door and the officer stood in the doorway blocking his entry into the view, he did not identify himself as an officer. And Ms. Fernie was the only testimony that was held credible by the district court. At that time, she said she heard Mr. Clark mumble something that was inaudible. The officer then leaned forward and said, why don't you come on in? Within seconds, he has shoved Mr. Clark over a railing, falling backwards down to the hard concrete floor. In order to make that initial stop, the officer needed to have individualized suspicion that Mr. Clark was committing a crime or about to commit a crime. In order to search the bags, they needed to know that Mr. – have individualized suspicion that he was armed and dangerous. It's our contention that they had neither. I'm confused.  To grab him at the door, and then to this tussle, and then ultimately to a formal arrest, right? There's no doubt that the formal arrest was a formal arrest, eventually. Correct. Right? After he fell over the side and all that. If there was a search instant to an arrest, it was instant to that arrest, right? The ultimate, actual arrest. Correct. All right. So the question becomes, does it not, whether there was probable cause for that arrest. Not for the – not whether the grabbing him at the door, there was probable cause, but whether there was probable – whether the ultimate arrest was a proper arrest. Is that right so far? If I understand your question, Your Honor, I believe the answer is no. They – the government would like, Your Honors, to believe that this was a consensual encounter at the outset that escalated to an arrest based upon probable cause. That is not what happened. The – it's true that the case law says that the Fourth Amendment is not implicated if an officer approaches a person in a public area and asks them for identification and a ticket. Most of those cases arise in an airport, for instance. But all of the cases, every single one of them makes clear that it has to be clear to the individual that he is free to leave. That is not the case here. Ms. Fernie was not free to leave. Mr. Clark was not free to leave. I understand what you're saying in terms of my question. You're saying that the ultimate arrest wasn't proper, not because the original stop wasn't proper, not because ultimately they didn't have probable cause, perhaps, to think he was assaulting an officer or whatever, but because the original stop wasn't proper. Is that what you're saying? I believe the original stop was improper, and that anything – to the extent Your Honor, I would suggest that, number one, the district court made no findings of facts related to that assessment, and those facts really turned the possibility of – Related to what happened after he was shoved over the railing. Pardon me? Related to what happened after he was shoved over the railing. That's correct. But it did make a finding with regard to the reasonableness of the original behavior. That's correct, Your Honor. All right. So unless we disagree with that assessment, which we could, what I'm trying to pinpoint is, if we assume that there was a proper finding with regard to the – that there was originally a proprietary stop, let's just assume that for now. Okay. Then the – then my question is, are there any facts that would have to be found with regard to the search-instanting arrest theory? And that's what I'm having trouble piercing from what you're saying. Okay. Yeah, I do think there are facts. A lot of them stem from an accredibility assessment, and the district court is in the best position, because he saw the witnesses, he heard the testimony, and he is in the best position to make that assessment regarding – What are the facts? Why? What happened? What happened after he was shoved over the railing? Was he resisting? If he was resisting, was it reasonable? Did he intend to inflict harm upon the officer? Did he actually inflict harm upon the officer? These were the – So the answer to my original question is that there have been no findings as to whether there was probable cause to arrest him ultimately for what he was ultimately arrested for. That's correct, Your Honor. And I would also suggest that even if Your Honors believe that Mr. – that the district court was correct, that there was reasonable suspicion to stop Mr. Clark, that does not get you into the bags. Terry simply held that under a confined – certain carefully defined circumstances that an officer can conduct a pat-down in the interest of safety, but you always need individualized suspicion that that person is about to commit a crime or is committing a crime. In order to get into the bags, you have to have individualized suspicion that that person is armed and dangerous. Well, that's if this is a Terry stop that you're talking about. Pardon me? That assumes that what we're dealing with is a Terry stop rather than a search incident through an arrest. That's correct, Your Honor. All right. And my point is simply that even if Your Honors do find it's a valid Terry stop, that does not get you into the bags. The government's argument in that respect rests upon the assumption that because the officer had a lot of experience, that he absolutely would have felt the weapon in the bag and, given that, could open it. Number one, he didn't do that. He just went into the bag and opened it. Number two, there's no evidence regarding the texture of the bags, the feel of the bags, the weight of the bags. That is not in the record. Was he presumptively prosecuted for resisting arrest or assaulting the officer or any of that? Was he – no, Your Honor. He was only prosecuted for the gun. Yes, Your Honor. So there was no finding in the course of the prosecution with regard to probable cause on the other issues. That's correct. With respect to Mr. Clark's – the government's argument is – Counsel, I'm sorry, your time has expired. Thank you. We'll hear from the government. May it please the Court. My name is Andy Colasurdo and I'm representing the United States in this matter. Mr. Clark, a nine-time convicted felon, pled guilty to felon in possession of a firearm at sentencing the district court judge, determined that six of his prior nine felony convictions qualified as violent felonies under the Armed Career Criminal Act and sentenced him to 15 years. That determination was proper in light of the controlling Supreme Court precedent and the precedent within the Ninth Circuit. What's obviously of more concern to this Court is the district court's suppression or denial of the – Denial of a motion to suppress. And as stated in the briefs, the government believes that the district court's decision can be upheld on two grounds. One, that the court's own decision that the property was abandoned was proper. The problem with the abandonment theory is that we don't seem to have any finding as to exactly when he dropped it. And if he dropped it as soon as he was inquired as to, you know, what was in the bags before any tussle started, then the judge was probably right that he didn't make such a finding. And if – and after that, for all we know, it was knocked out of his hands. You know, no matter how proper the police actions, if it was knocked out of his hands, he couldn't have abandoned it. I think if you look at the testimony and the factual record, there is sufficient evidence. Now, what we need to show is that his abandonment through either words, actions, or other objective facts, and I think there's circumstantial evidence to show that he set these items down or dropped them when he went. There may be evidence, but there's no finding. That's what I'm saying. In other words, it's possible that that happened. It's also possible it was knocked out of his hand.  The judge didn't seem to think it mattered. I would agree that the court didn't lay out fact-by-fact basis, but I think the facts that do support it are the facts that – the testimony was that the bags were found right outside the trailer door, as you can see from the sliding glass door from the picture that I provided. The bags contained precursors to meth, methamphetamine, and a firearm, obviously items that he would want to likely dispose of. The officer, in his testimony, told the court that he did not see the bags in Mr. Clark's hands when he grabbed him. Now, the testimony was that Clark arrived at the door. When he was asked to come in, what he had in his hands, he turned to flee. Counsel, if I may suggest, you might want to go to the search-incident-to-arrest theory. That may be a stronger ground for the government. And I would agree with Your Honor. If you follow the – If you follow the events as they occurred, I'm not going to go through the litany of reasons why a Terry stop would have been justified, but certainly, you know, with the history of firearms and gunplay, both the history that an officer had been fired at at that location, the fact that the owner of that trailer had been shot in conjunction with all the drug activity, both at the time of the shooting and what had occurred that day in the short time that Mr. Brooks was at the back. But ultimately, it has to matter that the guy walked away, because otherwise you'd be saying that anybody at the event would have been stopped. And you're not saying that. You're saying, right? Right. If you're looking at the search-incident-to-arrest, I think at the time that he interjects himself to the situation, he knocks on the door. Based on all the circumstances that the officer has, he has at least a reasonable suspicion to split. All right. Now, does he ever say to him, stop? Or he says, what's in your hand? The guy then turns and walks or runs away, but there seems to be conflicting evidence of that. The court said he immediately turned and fled. Well, fled could mean leave, or it could mean run. Right. He immediately – There's a difference, it seems to me, in my inference you might draw. Based on the witnesses who were sitting at the – Ms. Ferney, who testified that the officer was in clear uniform, so Mr. Clark knew he was an officer when he saw him. She mentioned that the officer quickly ran out. So if he's moving that quickly, it's likely in response to Mr. Clark moving very quickly. All right. So – but let's assume that for now. Let's assume that that was a problem. But in order to have a search – a proper search-incident-to-arrest, there has to be a probable cause for the ultimate arrest. And that determination has never been made, has it? But I think there's facts in the record sufficient to support that. What we have is – Well, that could be, but then we're back to the same problem again. There may be facts sufficient to support it, but don't we need a determination by the trial judge? I think the Court found the facts that could lead – I mean, the Court found facts. I think this Court would then be allowed to make a legal finding based on those facts. And the facts that the Court found was that Mr. Clark showed up when he was asked to come in and what he had in his bag, so he immediately turned and fled. The officer grabbed him. The officer was in uniform. It's clear he was an officer. There's no lighting problems inside. Mr. Clark then swung his arms wildly. The officer, trying to avoid being hit, pushed him. He fell over the railing. The officer went to go cut off his escape route. The defendant charged him. As a practical matter, if we were to reverse on the – on the abandonment ground and remand, I presume there could be another hearing or another – or even findings. I mean, you could still have a – that wouldn't necessarily lead to the conclusion that it was probably excluded. You could presumably have another evidentiary hearing and a determination. I think that's possible. I guess I would argue that it's not necessary based on the factual record. It's clear that Mr. Clark physically confronted the officers, the officers who were under their lawful authority to conduct a Terry stop, to at least ask him some questions. And once – it's not a consensual encounter. Once they have reasonable suspicions, they're allowed to use reasonable efforts to detain this person and confirm or dispel their suspicions. Now, Mr. Clark escalated the situation by charging the officer and physically confronting him. The officer acting in his lawful authority – Let's – there's no finding as to whether he ran away or walked away, but he left. Okay? Suppose he just said, you know, I don't want to see himself. I don't want any part of this. He turned around and left. At that point, why did they have the authority to grant him before saying stop or we want to talk to you or anything like that? If you look at Illinois v. Wardlow, that was a Supreme Court case where the defendant who was in a high-crime area sees a patrol car come into the area and immediately flees. The officers then chase the suspect down, apprehend him or stop him, detain him. They ask him some questions, and they feel a bag that he has in his hands. If just being in a high-crime area and splite is enough to support a reasonable – I'm asking a slightly different question. Please listen to the questions. Okay. Okay. Sorry. I'm assuming that they had authority to stop him. Okay. That they have authority to grab him. Yes. At that point. Without having said stop. Yes. They are able to take reasonable measures, act reasonably in detaining the person. Now, it wasn't a harsh grab. He just grabbed him on the shoulder. And then at that point, it was the defendant who escalated the situation. Had Mr. Clark just stopped, they would have questioned him. They would have felt his bag. And this is the bag. They would have felt the firearm that completely filled. We're not talking about a little .22. We're talking about a firearm that completely filled this up. An officer of 20 years' experience would have been able to feel the outline of this gun. Nonetheless, probably would have seen it since this bag doesn't, while it's zippered, does not zip. And if anything else, just like in Wardlock, where they felt the bag and it was heavy, that did not dispel their concerns that he was armed, and they would have been allowed to open it, even had it been zipped. All right. Another question about the search instance, the arrest there, is if – do we know at this point, is there a finding, or does the evidence conclusively demonstrate that location of the bag was within the area that would have been proper for a search instance for an arrest at the time he was arrested? Do we know exactly where he was when he was arrested? What I would – yes. And what I would direct the Court's attention to is Government's Exhibit 18, which is a photograph of the trailer and the ramp, and you'll see an X. It was the testimony of both Officer Bronkhorst, I believe Conine, and Caffer, that when Mr. Clark was eventually subdued after the – he was tased, that it occurred right where that X is. That, used in conjunction with this photograph right here, illustrates how close in proximity. We're talking maybe four to five feet away. In addition, the officers, if making the arrest, would obviously have had to have taken control of his property, if nothing more than to inventory it. Again, this does not zip. They would have been able to feel the gun and, for public safety, take it into their possession. Just with respect to the abandonment, and I know the Court is – might be reluctant to find that he abandoned the items when he – that he specifically intentionally dropped them. What I would say is that doesn't preclude a finding of abandonment. Once he dropped the bags, whether it be intentional or accidental, his efforts at that point were to get away, to run away – and if you look at the lengths that he went to try to get away – from the officers, from the trailer, from his bags. And if you look at the defense case, which is Thomas, we have a very similar situation where a defendant set a bag down and walked away from it outside the that he abandoned the bag at the top of the stairs. He left it behind in a public place where he retained no regional expectation of crime. Thank you, counsel. Your time has expired. Thank you. The case just argued will be submitted for decision, and we will
judges: O'scannlain, Berzon, Haddon